WELCH, Judge,
dissenting.
By an unpublished memorandum, the majority affirms William B. James’s convictions and sentences for two counts of robbery in the first degree, in violation of § 13A-8-41, Ala.Code 1975, and four counts of theft in the first degree, violations of § ISA-8-3, Ala.Code 1975. The majority holds that the trial court abused its discretion when it consolidated the theft charges with the robbery charges, and I agree with that holding. The majority then holds that the error was harmless because James did not establish that he suffered any actual prejudice; specifically, the majority states in its unpublished memorandum:
“James failed to prove any prejudice beyond bare allegations. Based on the amount of evidence tending to support a conviction for each of the respective sets of crimes, there is nothing in the record that indicates that the jury was overloaded with prejudicial information or that its verdicts were based on anything besides the evidence as to each charge. Also, the fact that there were separate verdict forms for each charge, taken together with the trial court’s jury instructions, substantially reduced the danger that the jury would use evidence of one of the crimes charged to infer James’s guilt on the other crimes charged.”
I disagree with the majority when it holds that the erroneous consolidation was harmless error.
“A determination that an error was not harmless is an extremely weighty conclusion; it implicates profound notions of fairness and justice.” United States v. Lane, 474 U.S. 438, 478, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986) (Stevens, J., and Marshall, J., concurring in part and dissenting in part) (footnote omitted). To determine that an error was not harmless requires a finding that the error caused actual prejudice because it had a “substantial and injurious effect or influence in determining the jury’s verdict.” United States v. Lane, 474 U.S. at 449 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). See also Ex parte Tisdale, 990 So.2d 280, 283 (Ala.2007).
Misjoinder of charges is as inherently prejudicial as is the erroneous admission of evidence of collateral bad acts prohibited by Rule 404(b), Ala. R.Crim. P. The Alabama Supreme Court has discussed the error of misjoinder with an analysis following and referring to Rule 404(b) and finding reversible error. Ex parte Tisdale, 990 So.2d 280 at 284-85. As it was in Ex parte Tisdale, the prejudice to James here is clear and, in fact, is far more compelling: a single jury was exposed to evidence of multiple unrelated charges involving separate victims and a wide range of unrelated criminal activities and evidence from separate investigations. The erroneous consolidation here of the robbery charges with the four theft charges permitted the jury to hear about four additional felony charges that involved unrelated activities and victims and that occurred at times completely unrelated to the robberies. In like vein, the erroneous consolidation of the two robbery charges with those four theft charges placed before the jury extensive evidence of the two additional felony charges involving a weapon — charges that were unrelated to the four thefts and that were not part of a common plan or scheme *171 related to the thefts. The majority correctly holds that “in separate trials on the robbery charges, evidence of the theft charges would not have been admissible, and vice versa.” Because of the erroneous joinder of the charges, however, all the evidence the majority acknowledges would not have been admissible was, in fact, admitted for the jury’s consideration. As a result, the jury’s determination of James’s responsibility for the four thefts was diverted by the interjection of numerous collateral facts and issues unrelated to those thefts, including the investigative and forensic evidence related to the proof of the robberies. Likewise, the jury’s process in determining James’s responsibility for the two robberies was diverted by the interjection of collateral facts and issues related to multiple thefts involving multiple victims and carried out at multiple locations, none of which was related to the robberies. There was no overlap of proof for the two sets of crimes and no logical connection or common thread between the two sets of crimes. The jury was thus permitted to hear and consider evidence from two distinct series of crimes that lacked a common plan or scheme, and the risk of the prejudicial “spillover” effect from the jury’s merger of all the evidence into its consideration of James’s guilt for any one crime was substantial. Evidence of James’s possession of a mask, after the police chased him to his home, could have been produced without injecting the evidence of the four thefts. (R. 82.) The resulting prejudice to James is not merely speculative.
The error is not harmless for the additional reason that the independent evidence of guilt on any single charge was not overwhelming, particularly in the robbery cases. This point is borne out by the fact that the jury submitted two questions to the trial court during deliberations. The jury asked:
“ — Can we know anything more about the gun?
“ — the money + checks from Gil’s [sic]?”
(C. 250, R. 285.)
The jury’s questions strongly suggest that the jurors were not convinced of James’s guilt in the robbery cases. In a separate trial of only the two robbery cases, the jurors might have had a reasonable doubt about James’s guilt if it had not had the addition of the collateral evidence diverting their minds from the issues and evidence only presented in the robbery cases. Instead, the jurors were erroneously permitted to consider a vast amount of evidence unrelated to the robberies, and, as discussed below, they were encouraged to consider all the evidence in deciding James’s guilt as to each and every count with which he was charged. The prejudice to James was actual and substantial.
The majority’s assertion that the trial court’s jury instructions and the fact that the trial court provided separate verdict forms for each charge “substantially reduced the danger that the jury would use evidence of one of the crimes charged to infer James’s guilt on the other crimes charged,” is wholly unpersuasive. First, the fact that the trial court provided separate verdict forms for each charge adds nothing to the harmless-error calculation because separate verdict forms are required by Rule 23.3, Ala. R.Crim. P., and are provided in every criminal case. Second, the trial court did not issue any limiting instructions; it simply instructed the jury on the elements of each of the six charges and said nothing to the jury about limiting its review of evidence relevant to one count when considering the verdict for *172 any of the other counts.[3]
That the jury found James guilty of all counts is further indication that its deliberations were contaminated by the extensive evidence in each set of crimes that was collateral to the evidence that was admitted as to the other set of crimes. Moreover, because the theft charges and the robbery charges stemmed from unique circumstances — repeated robberies of the same victim in one set of crimes and the series of thefts leading up to the unusual theft of an automatic teller machine in the other set of crimes, it is highly likely that each set of charges and the evidence presented as to the charges was particularly inflammatory and prejudicial relative to the other set of charges. This factor, too, weighs in favor of the determination that the error in the consolidation of the multiple charges was not harmless.
In conclusion, the combination of the extensive evidence of unrelated crimes the jury was permitted to hear, the lack of any instruction to the jury on considering the six counts independently and considering only the evidence relevant to each count separately, the inflammatory nature of the robberies and the thefts, and the weakness of the robbery cases, leads me to conclude that the erroneous consolidation of these offenses had a substantial and injurious effect or influence on the jury’s verdicts. Because James demonstrated actual prejudice, I cannot agree with the majority’s determination that the error in consolidating the offenses was harmless. To the contrary, the prejudice from the improper joinder was so compelling that James was denied a fair trial because the jury could not have effectively determined James’s guilt or innocence on each charge.
For all of the foregoing reasons, I dissent.

. James did not object at trial to the court's failure to give a limiting instruction, and he does not raise the issue on appeal. I discuss the absence of that jury instruction here not as a separate ground for reversal, but as part of the harmless-error analysis and as additional support for my conclusion that the error resulting from the improper joinder of the charges was not harmless.